Entered: October 30th, 2025
Signed: October 30th, 2025



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Roman Catholic Archbishop of Baltimore, | * | Case No. 23-16969-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| | * | |
| * * * * * * | * | * * * * * * |
| Official Committee of Unsecured Creditors, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. Pro. No. 25-00084-MMH |
| | * | |
| Roman Catholic Archbishop of Baltimore, | * | |
| | * | |
| Defendant. | * | |
| * * * * * * | * | * * * * * * |

## **MEMORANDUM OPINION**

A chapter 11 case offers a debtor and its creditors an opportunity to resolve prepetition disputes in a single forum. If those efforts are successful, the debtor emerges with a fresh financial start and creditors receive a fair and equitable distribution, often bringing much-needed closure for all involved. That extraordinary outcome—not otherwise readily achievable under state law—does not, however, come without burdens and obligations. And rarely does any party, including the debtor, get everything it wants through the chapter 11 process.

Here, the debtor seeks to raise a state law defense to its liability on most, if not all, claims asserted against it in this chapter 11 case. Based on the debtor's position, the primary work being done by this chapter 11 case is the automatic stay of prepetition litigation against the debtor and its assets. The creditors' rights and the debtor's alleged defense are all governed by state law. Yet, the debtor argues that it should be permitted to remain in this case and to use the bankruptcy process to resolve those claims.

The pending motion and cross-motion for summary judgment touch on this tension, as those motions largely turn on the debtor's ability to invoke the state law defense of charitable immunity against child sexual abuse claims asserted in this case. The committee posits at least four theories as to why the debtor cannot use the defense. The debtor counters that the bankruptcy filing did not affect its state law claims and defenses, which are expressly preserved under the Bankruptcy Code.[1] Both parties suggest that this is a significant issue that may dictate the future path for the debtor and its creditors.

The Court has reviewed the parties' respective papers and exhibits, as well as the arguments presented at a hearing before the Court on this and related matters. The Court will deny both the committee's motion for summary judgment and the debtor's cross-motion for summary judgment. The positions set forth in those motions are not supported by sufficient undisputed facts in the record and would benefit from additional factual support obtainable only through a trial on the merits. Indeed, the Court finds that its deliberations would benefit from the opportunity to observe witnesses and hear live testimony subject to cross-examination. The issue presented in this adversary proceeding and its impact on both the debtor and its creditors are too significant for the

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code"); 11 U.S.C. § 558 (defenses of the estate). The Court sets forth certain references and citations in the footnotes of this Opinion solely to allow for the provision of more (rather than less) information; the use of footnotes is not intended to minimize the importance of the materials or their relevance to the Court's holding.

2

Court to do anything short of holding each party to their respective burdens. This adversary proceeding will proceed to trial starting on December 15, 2025.

The Court provides certain observations regarding, and further explanation of, this decision below.

I.  Relevant Background

The Roman Catholic Archbishop of Baltimore (the "Debtor") filed a petition for relief under chapter 11 of the Code on September 29, 2023.[2] Case No. 23-16969, ECF 1. On that same date, the Debtor filed a Motion to Extend the Automatic Stay (the "Stay Motion") to certain related entities included as additional insureds under the Debtor's various current and legacy insurance programs. *Id.*, ECF 12. The Court entered an interim order granting certain of the relief requested by the Stay Motion, which was then continued by further order of the Court (collectively, the "Stay Order"). *Id.*, ECF 52, 173.

The Debtor has acknowledged that the filing of this case and the need for the Stay Order resulted from the Maryland Child Victims Act (the "CVA"), passed by the Maryland General Assembly in April 2023. The CVA eliminated the statute of limitations on civil lawsuits involving child sexual abuse. The CVA became effective on October 1, 2023, immediately after the filing of this case.[3]

Since that time, the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and the Debtor's insurance carriers (the "Insurers") have been engaged in this case,

---

[2] The Debtor is operating as a debtor in possession under section 1107 of the Code. 11 U.S.C. § 1107. All references to the Debtor herein include its role as a debtor in possession in this case.

[3] The Committee filed a motion to clarify the scope of the Stay Order (the "Committee Stay Motion"). Case No. 23-16969, ECF 1043. The Committee Stay Motion addressed important and time-sensitive issues facing Survivors (as defined below), the Debtor, the Debtor's nondebtor affiliates, and the Insurers (as defined below), relating to an amendment to the CVA adopted by the Maryland General Assembly in April 2025. The Court held a hearing on the Committee Stay Motion and all related papers on May 1, 2025, and entered a supplemental Stay Order shortly thereafter. Case No. 23-16969, ECF 1127.

3

participating in mediation and working towards an agreement on a plan of reorganization. The primary creditors in this case are the survivors of child sexual abuse ("Survivors"), and the members of the Committee are in fact Survivors themselves. The mediation is ongoing and is governed by the Agreed Order Directing Mediation, Appointing Mediators, and Ordering Mediation Discovery (the "Mediation"). *Id.*, ECF 705.

On or about April 1, 2025, the Committee filed a Notice of Limited Mediation Dispute and then commenced this adversary proceeding. ECF 1; Case No. 23-16969, ECF 1032. The Committee's primary position is that the Debtor's assertion of charitable immunity—an affirmative defense to tort liability under Maryland state law—undercuts the utility of the Mediation and the resolution of Survivor claims in this case. The Debtor asserts that it is entitled to rely on all its state law defenses in the chapter 11 claims resolution process, including the charitable immunity defense. The Committee's Complaint and the Debtor's Answer and Counterclaim in this adversary proceeding focus on the role, if any, of charitable immunity in the Debtor's chapter 11 case.

On October 6, 2025, the Court held a hearing (the "Hearing")[4] to consider the following dispositive motions: (i) the Motion for Summary Judgment filed by the Committee (the "Committee's Motion"); (ii) the Opposition and Cross-Motion for Summary Judgment filed by the Debtor (the "Debtor's Motion"); and (iii) all related papers. ECF 43, 68, 80, 93. The Court heard statements and arguments on those motions from counsel to the Committee, the Debtor, and the Ad Hoc Committee of Parishes, Schools, and Affiliates (the "Ad Hoc Committee").[5] The parties also submitted post-Hearing briefs. ECF 103, 104. The Court has now reviewed the parties'

---

[4] Unless otherwise stated, all transcript references herein are to the transcript of the Hearing at ECF 102 (and noted as "Tr.").

[5] The Ad Hoc Committee filed a Motion to Intervene in this adversary proceeding, which the Court will grant on a limited basis by separate order. ECF 81. The Court has considered the Ad Hoc Committee's papers and its counsel's statements on the record of the Hearing in resolving the pending dispositive motions.

4

respective papers, exhibits, and arguments, as well as the applicable law. These matters are ripe for resolution.

II. Jurisdiction and Legal Standards

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. The District Court has referred the chapter 11 case and this adversary proceeding to this Court under 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable to this matter by Bankruptcy Rules 7052 and 9014.

The relief requested by the Committee's Motion and the Debtor's Motion is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact.[6] Fed. R. Civ. P. 56. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). *See also Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment).

Motions for summary judgment succeed or fail largely on the state of the evidentiary record. The party seeking summary judgment bears the burden of proof in the first instance. A court must view that party's evidence in the light most favorable to the nonmoving party and "draw all justifiable inferences" in the non-moving party's favor, "including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S.

---

[6] *See, e.g., Fisher v. Johnson*, No. RDB-16-2157, 2017 WL 1546413, at *3 (D. Md. Apr. 28, 2017) ("Whether a fact is considered to be 'material' is determined by the substantive law, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson*, 477 U.S. at 248; *accord Hooven-Lewis*, 249 F.3d at 265.").

496, 520 (1991) (citations omitted). However, "[w]hen a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett*, 532 F.3d at 297.[7]

In addition, "[w]here, as here, the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would entitle it to a directed verdict if not controverted at trial)." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012). In reversing the lower court's decision in *Clear Channel Communications*, which granted the movant summary judgment on its affirmative defense of laches, the Fourth Circuit also explained that "'where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing.'" *Id.* at 299 (citations omitted).

As discussed in more detail below, the Committee and the Debtor dispute certain facts that the Court finds material and necessary to resolving this adversary proceeding. These disputed material facts include, among others, the Debtor's treatment of child sexual abuse claims prior to the filing of the Debtor's chapter 11 case, the Debtor's intentions and conduct with respect to the treatment of Survivor claims when it filed the chapter 11 case, the Debtor's assets that are and are not subject to a trust and the use of those assets, and the intentions of the Maryland General

---

[7] Under Civil Rule 56, a party may support assertions made in a motion for summary judgment by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. Fed. R. Civ. P. 56(c). A court has some flexibility in the kinds of evidence that it can consider in resolving a motion for summary judgment. *See, e.g., Humphreys & Partners Architects*, 790 F.3d 532, 538–539 (4th Cir. 2015), *as amended* (June 24, 2015).

6

Assembly in passing the CVA. The evidentiary record at this time is insufficient to support either party's requested relief.[8] This dispute thus must proceed to trial.

    III.    <u>The Committee's Motion for Summary Judgment</u>

By the Committee's Motion, the Committee asks this Court to rule that the state law defense of charitable immunity is not available to the Debtor, either specifically in this chapter 11 case or more generally under state law. The Committee supports this request primarily with four different theories:

- The state law charitable immunity defense is incompatible with federal bankruptcy law.

- The Maryland General Assembly abrogated[9] charitable immunity with the enactment of the CVA.

- The payment of Survivor claims is within the Debtor's mission and thus not subject to the charitable immunity defense.

- The Debtor must establish with evidence that its assets are held in trust, as required for protection under the charitable immunity defense.

Each of these theories presents a mixed question of law and fact,[10] though the Debtor argues that its status as a religious organization alone qualifies it for charitable immunity.

---

[8] As explained herein, the Court finds limited value to the parties' respective evidentiary submissions. For the most part, the parties offer a declarant to explain or cite to various statutes, laws, public documents (including the Debtor's Informational Brief in this case), or other information they believe supports their respective positions. To the extent this information is a legislative or adjudicative fact, the Court takes judicial notice of it for purposes of acknowledging the law, document, or other public statements but does not accept it as proving the truth of the matters asserted therein. The Court cites to certain of this information in this Opinion. (Citations to exhibits herein are based on the numbering provided in the Exhibit Lists filed at ECF 88 and 89; the Court cites the docket numbering for clarity even though, at the Hearing, the Committee's counsel referenced the Committee's exhibits by the letters used in the declaration.) Overall, the parties' respective evidentiary records are insufficient because the information either demonstrates a disputed material fact or is inadmissible under the applicable rules.

[9] The Committee also discusses this argument in terms of conflict preemption. ECF 43, at 16–17. The Court's analysis of abrogation and conflict preemption for purposes of the dispositive motions is the same—the Court does not have sufficient undisputed material facts to resolve the dispute.

[10] The U.S. Supreme Court has explained that when "mixed questions immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have (emphatically if a tad redundantly) called 'multifarious, fleeting, special, narrow facts that utterly resist generalization'" then "appellate courts should usually review a decision with deference." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

The Court does not find any of the Committee's (or for that matter, the Debtor's) arguments as clear or indisputable as their submissions might suggest. The issue of charitable immunity is a difficult one, as the state law doctrine is convoluted and there is very limited discussion of the invocation of charitable immunity by a debtor in a bankruptcy case.[11] Moreover, the Debtor's assertion of the defense is central to this case, namely, the purpose of this case and the Debtor's ability to confirm a plan of reorganization under section 1129 of the Code that provides fair and equitable treatment to Survivors.

The defense of charitable immunity in the context of this case is arguably at odds with certain aspects of the Bankruptcy Code.[12] For example, the Code imposes an automatic stay to prevent creditors from seizing the debtor's assets and either disrupting the debtor's operations or receiving more than that creditor's fair and equitable share of the debtor's assets. If the debtor's insurance policies are the only assets available to the creditors in this case, an automatic stay arguably is not necessary to prevent dismemberment of the debtor. It is also unclear whether a bankruptcy case is necessary to ensure a fair and equitable distribution of that one class of assets to creditors.

Moreover, the Code requires a debtor to devote its assets to the payment of creditors' claims. Specifically, the debtor must propose a distribution scheme that garners creditors' support or pays those creditors the liquidation value of the debtor's assets. It is unclear how the best interests of creditors test or the absolute priority rule of section 1129 of the Code work when only a small portion of a debtor's assets will be made available to creditors, but the debtor will get to

---

[11] The Committee relies on *In re City Homes III, LLC*, 564 B.R. 827 (Bankr. D. Md. 2017), to support its position. In *City Homes*, the court discussed the value of a waiver of charitable immunity in the context of nondebtor releases in a proposed chapter 11 plan. Although the court's discussion of charitable immunity in *City Homes* is informative, that case is inapposite to the facts before the Court.

[12] The Court notes that these issues are very fact-specific and must be analyzed under all relevant Code sections, including section 558 of the Code (defenses of the estate).

keep all other assets and continue in operation as if the bankruptcy never happened. 11 U.S.C. §§ 1129(a)(7), (a)(11), (b)(2).[13]

The interplay between federal and state law in this context requires not only an analysis of the Code and relevant case law, but also a more definitive factual record. That record should address, among other things, the purpose of the Debtor's bankruptcy filing, the assets available to pay creditors, and the Debtor's ability to comply with the Code.[14] Notably, these factual issues—many of which the parties addressed in their papers or arguments but not with adequate evidence[15]—are also relevant to whether the Debtor holds its assets in trust or otherwise should be able to assert the charitable immunity defense in this chapter 11 case.

---

[13] For example, courts must wrestle with the interplay of the absolute priority rule and the concept of "fair and equitable" in cases such as the one before the Court. *See, e.g., In re Roman Cath. Archbishop of Portland in Or.*, 339 B.R. 215, 230 (Bankr. D. Or. 2006) (identifying but not deciding issue); *In re Wabash Valley Power Ass'n, Inc.*, No. 85-2238-RWV-11, 1991 WL 11004220, at *60 (Bankr. S.D. Ind. Aug. 7, 1991), *subsequently aff'd sub nom. Matter of Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305 (7th Cir. 1995) (discussing both absolute priority and fair and equitable tests); Pamela Foohey, *Chapter 11 Reorganization and the Fair and Equitable Standard: How the Absolute Priority Rule Applies to All Nonprofit Entities*, 86 ST. JOHN'S L. REV. 31 (2012) (exploring this tension in nonprofit cases). Here, the Court does not have a sufficient undisputed factual record to consider and apply the correct legal standard. The record contains only generalizations concerning the value of the debtor's assets, the identity of assets available to pay Survivor claims, and the liquidation value of those assets.

[14] The parties dispute material facts on each of these three issues. For example, the Committee argued that compensation of survivors falls within the Debtor's charitable mission and stated that "if a Defendant admits that compensating a tort Plaintiff falls within its charitable mission, then the most fundamental, the most critical predicate for application of the charitable immunity doctrine just evaporates." Tr. at p. 151. The Debtor, on the other hand argued that the archbishop is controlled by canon law in how the Debtor's funds may be allocated. Tr. at p. 216. The Committee also stated that "the Debtor filed bankruptcy for reasons other than to escape financial catastrophe[.]" Tr. at p. 27. The Debtor disagreed, stating that "… the Debtor is in bankruptcy because if the Debtor [had] not sought the protection of the Bankruptcy Code, and the mechanisms of the Bankruptcy Code to bring all these claims together and find a global resolution, the Debtor would be hemorrhaging cash in State Court litigation, and the Debtor would not be financially able to support that." Tr. at p. 52.
  A review of the declarations and related exhibits submitted by the parties also reveals the parties' differing positions on key material facts. Thus, to the extent admissible in part as legislative or adjudicative facts of which the Court may take judicial notice, the evidence supports denial of the dispositive motions. For example, the Committee points to the Debtor's statements in public documents and at its section 341 meeting of creditors to refute the Debtor's position that it may rely on the charitable immunity defense in this chapter 11 case. *See* P. Ex. 2–11, 14–19. Likewise, both parties cite to statements concerning the Debtor's prepetition mediation and settlement efforts to support their respective positions. D. Ex. 5 at ¶¶ 3, 7, 154–159; P. Ex. 9, 10, 11. Putting aside whether all such evidence is admissible or adequate to satisfy the parties' respective burdens, the evidentiary record demonstrates the existence of disputed material facts.

[15] The Fourth Circuit has explained that even when certain facts are uncontested "the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins., Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

Similarly, the Committee asserts that the Debtor's prior payment of child sexual abuse claims precludes it from now asserting the charitable immunity defense. That position focuses on whether the payment of child sexual abuse claims is within the Debtor's mission. Again, the Committee explained in general terms the Debtor's prepetition conduct with respect to child sexual abuse claims but did not provide adequate evidence, at this stage of the litigation, that those payments were within the Debtor's mission or that the Debtor used assets out of trust (or used non-trust assets) to resolve those claims.[16]

The Court pauses here to acknowledge the Debtor's First Amendment argument concerning what the Court can and cannot resolve. The Court has no intention to delve into canon law or the Debtor's religious tenets. The Court will, as it must, focus solely on "neutral principles of law . . . that are 'applicable not only to religious bodies, but to public and private lay organizations and to civil governments as well.'" *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 370 Md. 152, 180 (Md. 2002). The Court thus will evaluate the nature of the Debtor's assets, how the Debtor holds those assets, and whether the Debtor's conduct supports application of the charitable immunity defense in this case.

Finally, given the incomplete state of the factual record in this proceeding, the Court declines to resolve the impact of the CVA on the charitable immunity defense. As the Court noted at the Hearing, this theory requires the Court to resolve an unsettled question of state law. It further relies, potentially, on facts outside the four corners of the CVA—facts not adequately addressed by the current record. The Debtor also disputes the facts alleged by the Committee, with the Debtor

---

[16] The Court finds that the Debtor also failed to produce evidence at this stage of the litigation sufficient to carry its burden on the affirmative defense. The Committee objected to the two declarations offered by the Debtor to support the Debtor's Motion. On the issues concerning the Debtor's mission and use of trust assets, the Court agrees with the Committee's objections that Evidence Rule 1002 (best evidence) and Civil Rule 56(d) (need for discovery) preclude the Court from relying on key aspects of this evidence at this time. Tr. at pp. 248–250; ECF 93, at 9–10. The Debtor may, of course, offer this evidence in accordance with the applicable rules at trial. Moreover, even if the Court were to consider the declarations in their entirety, they do nothing more than highlight the disputed nature of certain material facts relevant to the charitable immunity defense in this chapter 11 case.

asserting that the Maryland General Assembly did not intend to abrogate the charitable immunity defense.[17] To the extent the parties argue that this Court can and should address the issue,[18] the Court would need a fully developed factual record with admissible evidence that speaks to the parties' respective positions.

Reviewing the factual record in the light most favorable to the Debtor, as required by applicable law, the Court denies the relief requested by the Committee's Motion. These issues must go to trial.

IV.     The Debtor's Cross-Motion for Summary Judgment

The Debtor's Motion asks this Court to grant summary judgment in favor of the Debtor on all counts in the Committee's complaint and the Debtor's counterclaim. The Debtor's primary arguments to support this requested relief are that the Debtor qualifies for charitable immunity with respect to the Survivor claims and that the defense is available to it under both state law and the Code.

The Debtor offers explanations of its history and the state and canon laws to which it is subject. But from the Court's perspective, not all that information is relevant or answers fully the questions before the Court.[19] The Court appreciates the unique nature of the Debtor's organization

---

[17] The Court notes that the Committee has requested discovery relating to the passage of the CVA and the subsequent amendment from the Debtor. To the extent that this information is not timely produced, the Court will resolve the matter in accordance with Federal Rule of Civil Procedure 37, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7037.

[18] Tr. at pp. 123–125, 198.

[19] The Court and the parties discussed the Debtor's exhibits at the Hearing. Tr. at pp. 248–250. As the Court noted above, the Committee lodged several objections to the two declarations offered by the Debtor to support the Debtor's Motion. The Court finds the declarations inadequate at this stage of the litigation for several reasons. For example, even disregarding the Committee's objections and focusing solely on public information, the declarations contain statements that the Committee disputes and that, according to the Committee, contradict the Debtor's statements and conduct prior to the commencement of this adversary proceeding. Given that the Debtor bears the burden of proof on both the Debtor's Motion and the affirmative defense of charitable immunity, the Committee raises adequate evidentiary issues to support a denial of the Debtor's Motion. Moreover, as also noted above, the Court agrees with the Committee's objections that Evidence Rule 1002 (best evidence) and Civil Rule 56(d) (need for discovery) preclude the Court from relying on certain aspects of the declarations at this time. Tr. at pp. 248–250; ECF 93, at 9–10. The Debtor may offer this evidence, with appropriate support and as permitted by the applicable rules, at trial.

and the importance of its mission to those whom the Debtor serves. In addition, as noted above, the Court is mindful of the potential Constitutional issues in this proceeding but cannot say, at this early stage, that those issues preclude the Court from resolving the parties' dispute or holding the Debtor to its obligations under the Code. Indeed, the Court may inquire into these matters on "purely secular terms without relying 'on religious precepts in determining whether the document indicates that the parties have intended to create a trust.'" *From the Heart*, 370 Md. at 180.

The Court requires additional evidence concerning, among other things, the Debtor's decision to file bankruptcy, its ability to use and comply with the Code, its efforts to resolve child sexual abuse claims, and its treatment of its assets both prior to and after the bankruptcy filing.[20] Moreover, even if the Debtor holds some assets in trust, the record is unclear concerning the charitable or permissible uses of those assets.[21] Though admissible testimony and documentary evidence offered at trial may establish each element of the charitable immunity defense,[22] the Court

---

[20] The current record does not contain undisputed facts on any of these matters. Indeed, the current record can be summarized as a "he said, she said" set of allegations with generalized supporting documents. For example, on the purpose of the CVA, see the Committee's comments at Tr. at pp. 123, 173, 178, 180, 182–183, and the Debtor's comments at Tr. at p. 226; on the reason why the Debtor filed bankruptcy, see the Committee's comments at Tr. at pp. 141–143, 162–163, and the Debtor's comments at Tr. at p. 205 (*see also* D. Ex. 5 at p. 2; P. Ex. 10); on the Debtor's mission, see the Committee's comments at Tr. at pp. 124, 125, 127, 129–130, 135, 152–153, 173, 190, and the Debtor's comments at Tr. at pp. 202, 215, 221, 224, 227; on the Debtor's trust assets, see the Committee's comments at Tr. at pp. 193–194, and the Debtor's comments at Tr. at p. 218 (*see also* P. Ex. 12). Even if the Court sets aside the parties' characterizations of the facts and issues, the evidentiary record at this point is insufficient to establish either party's position. The Court cannot make the necessary factual determinations without seeing and hearing from witnesses and allowing an opportunity for cross-examination.

[21] *See, e.g., Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 316, 68 A.3d 843, 857 (2013) ("In contrast to a private trust, which is 'devoted to the use of specified' and designated beneficiaries of the trust, '*a charitable trust property is devoted to purposes beneficial to the community*.' Restatement (Second) of Trusts, Introductory Note to Ch. 11.") (emphasis added); *see also From the Heart*, 370 Md. at 183 (explaining that "the property of a local church is held in trust by the religious nonprofit corporation *for the benefit of the local church congregation*") (emphasis added). Indeed, the stated purpose of the charitable immunity defense is to prevent funds held in trust from being diverted "to a completely different purpose." *Perry v. House of Refuge*, 63 Md. 20, 27 (Md. 1885).

[22] *See, e.g., Ward v. Rebuilding Together Baltimore, Inc.*, No. 1278, 2016 WL 3185134, at * 2–3 (Md. Ct. Spec. App. June 8, 2016) ("Charitable immunity is a 'judge-made doctrine [ ] intended to protect charitable organizations from tort liability.' *Montrose Christian School Corp. v. Walsh*, 363 Md. 565, 582 (2001). It consists of three elements: First, the predominate activities of the organization must be charitable in nature. *Abramson v. Reiss*, 334 Md. 193, 205 (1994). Second, funds must be held in trust, either expressly or by implication, for the furtherance of the charitable purpose. *James v. Prince George's County*, 288 Md. 315, 336 (1980). Third, the organization must have no liability insurance covering the complained-of act. *Abramson*, 334 Md. at 197.").

does not find the mere statement that the Debtor is a religious organization sufficient at this stage of the litigation.[23]

As noted above, this adversary proceeding turns on whether the Debtor may invoke charitable immunity in its chapter 11 case. The doctrine of charitable immunity is an affirmative defense under Maryland Law. As one Maryland court recently explained,

> "An affirmative defense is one which ... concedes the basic position of the opposing party, but which asserts that notwithstanding that concession the opponent is not entitled to prevail because he is precluded for some other reason." *Armstrong v. Johnson Motor Lines, Inc.*, 12 Md. App. 492, 500 (1971). Upon invoking an affirmative defense, the defendant assumes the burden of initial production as well as the burden of ultimate persuasion as to each element of that defense. *Bd. of Trustees, Comm. Coll. of Balt. Cnty. v. Patient First Corp.*, 444 Md. 452, 470 (2015).

*Jay Coll. of Health Scis. v. Chinwuba*, No. 1776, 2025 WL 762163, at *7 (Md. Ct. Spec. App. Mar. 11, 2025).[24] Considering the state of the evidence and the affirmative defense of estoppel

---

[23] The Debtor relies heavily on one sentence in a Maryland Supreme Court decision to support its position that because it is a religious organization, the Debtor holds its assets in trust and is entitled to charitable immunity. Specifically, the Maryland Supreme Court stated, "Under Maryland law, the property of a charitable or religious nonprofit corporation is held in trust." 370 Md. at 183. A few things to note about this statement. *First,* if you trace the origins of this statement back through the case law, it comes from the Pennsylvania Supreme Court, which stated, "Where, as here, the corporation is organized for charitable purposes, its property is, *in a sense,* held in trust for the public (see Humane Fire Co.'s Appeal, 88 Pa. 389, 393; Hamilton v. John C. Mercer Home, 228 Pa. 410, 420, 77 A. 630), and the continual waste of it is directly detrimental to the public interest." *Commonwealth ex rel. Schnader v. Seventh Day Baptists of Ephrata*, 317 Pa. 358, 362 (1935) (emphasis added) (relied upon in *Inasmuch Gospel Mission v. Mercantile Tr. Co. of Baltimore*, 184 Md. 231, 239 (1945)). *Second,* the Maryland Supreme Court qualified its statement by noting that "the property of a local church is held in trust by the religious nonprofit corporation for the benefit of the local church congregation, . . . *unless the control of that property is modified by contract, express or implied.*" *From the Heart*, 370 Md. at 183 (emphasis added). Although discussed by the court in the context of a property dispute between a parent and local church organization, the language suggests that the general statement is subject to exceptions, which comports with secular trust law. *Finally,* the Maryland Supreme Court cites to the Restatement (Second) of Trusts §§ 348, 371 in laying the foundation for its general statement that religious organizations hold their assets in trust, suggesting that a secular review of the facts is required to establish the existence of a trust under Maryland law. And again, the establishment of a trust is just one component of charitable immunity. For a thoughtful review of the charitable immunity defense generally, including its history, purpose, and limitations, see 2 AM. L. TORTS § 6:45 (Spencer et al. eds. 2025).

[24] *Ward v. Rebuilding Together Baltimore, Inc.*, No. 1278, 2016 WL 3185134, at * 2 (Md. Ct. Spec. App. June 8, 2016) ("We begin by noting that charitable immunity is an affirmative defense, Md. Rule 2-323(g)(2), and [the defendant] had the burden of production and persuasion on the issue.") (citations omitted).

13

raised by the Committee,[25] the Court cannot say on the current record that the Debtor has carried its burden.

     V.        <u>Arguments Regarding Estoppel</u>

Finally, the Court will briefly address the parties' respective statements concerning equitable and judicial estoppel. The Court need not address those doctrines in any detail in this Memorandum Opinion because both are better addressed in the context of trial, with the benefit of a full evidentiary record. The Court does, however, want the parties to consider those doctrines and be prepared to address them at trial.

Estoppel—whether equitable or judicial—is a concept grounded in equity and fairness.[26] Equitable estoppel seeks to protect individual parties. Judicial estoppel seeks to protect the integrity of the judicial system. The Court takes both doctrines seriously and would only invoke estoppel if warranted by the facts of the particular case.

Here, the parties should consider the entirety of the docket in this case, including statements made to the parties and the Court and the context in which those statements were made. The Debtor suggests that its intentions to protect most of its assets with the charitable immunity defense were readily apparent from the commencement of this case. The Committee disagrees. The content or understanding of statements in this case may in fact matter greatly, as the Court confirmed the application of the automatic stay of section 362 of the Code to the Debtor and all the Debtor's assets as of the petition date. No party in interest has contested that ruling. And the Court has

---

[25] ECF 17, at 8; *see also* ECF 80.

[26] *See, e.g., Olde Severna Park Improvement Ass'n, Inc. v. Barry*, 188 Md. App. 582 (Md. Ct. Spec. App. 2009) ("'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.' *Knill v. Knill,* 306 Md. 527, 534, 510 A.2d 546 (1986)."); *Lowery v. Stovall*, 92 F.3d 219 (4th Cir. 1996) ("'The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.'") (citations omitted).

maintained that ruling and the automatic stay for over two years now. The Court will evaluate the facts of this case under the applicable standards for equitable and judicial estoppel after trial.

VI. Conclusion

The Court appreciates the time and effort all parties devoted to the dispositive motions before it. The Court understands that a ruling in favor of either party may eliminate the need for an evidentiary trial in this proceeding, but that does not necessarily lead to the resolution of the chapter 11 case or a determination that the case should remain pending. Moreover, the issues and factual record are not as clear or straightforward as either party claims them to be. Indeed, neither party established an adequate record of undisputed material facts that would allow the Court to rule in its favor.

The issue of charitable immunity raised in this adversary proceeding, in many ways, goes to the very heart of the Debtor's chapter 11 case. What parties said, did, knew, or understood are critical to a fair resolution of that issue. Details and nuances matter; a truncated resolution process on an insufficient factual record benefits no party. That said, the Court fully intends to keep the scheduled trial dates and to issue an opinion as soon as possible thereafter.

The Court will enter a separate Order consistent with this Memorandum Opinion.

cc:     All Parties
        All Counsel

**END OF MEMORANDUM OPINION**