IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE.<br><br>Debtor.[1] | Chapter 11<br>Case No. 23-16969-MMH |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>    Defendant/Counterclaim Plaintiff | Adversary Proceeding<br>No. 25-00084<br><br>Assigned to<br>Hon. Michelle M. Harner<br><br>Trial Date: December 15, 2025 |

**DEFENDANT THE ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE'S PRETRIAL STATEMENT**

Debtor/Defendant/Counterclaim Plaintiff the Roman Catholic Archbishop of Baltimore ("Debtor") hereby submits the following pretrial statement in accordance with Local Rule 7016-1(b).

---

[1] The last four digits of the Debtor's federal tax identification number are: 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

1. **Statement of the Case**

While the Court is well aware of the legal arguments and factual positions taken by Plaintiff the Official Committee of Unsecured Creditors (the "Committee") and Debtor on the issue of charitable immunity in light of the motions and cross motion for summary judgment previously filed in this adversary proceeding (ECF 43,68,80,93 and 111), Debtor submits this brief statement in support of Debtor's position that charitable immunity may be employed as a defense in this bankruptcy.

The doctrine of charitable immunity has been recognized in Maryland as far back as 1885. *Perry v. House of Refuge*, 63 Md. 20, 28 (1885). The doctrine is intended "to protect charitable organizations from tort liability." *Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 582 (2001). To qualify, Maryland courts have employed a straightforward analysis. First, the predominant activities of the organization must be charitable in nature. Second, funds must be held in trust, either expressly or by implication, for the furtherance of the charitable purpose. Third, the organization must have no liability insurance for the complained of act. *Abramson v. Reiss,* 334 Md. 193, 205 (1994).

Both Maryland judicial decisions and the legislature have confirmed that in those situations where insurance coverage is present, the defense does not extend to that portion of a claim which may be covered by insurance, yet the protection is still available for that part of the claim which looks solely to assets of the charitable organization. As observed by the *Abramson* court:

> We note that the Legislature has enacted a statute with respect to charitable institutions that choose to carry liability insurance. Maryland Code (1957, 1991 Repl. Vol.) Art. 48A, § 480. In the absence of such insurance, a negligence action cannot be maintained against a charitable institution. *See McCormick v. Church*, 219 Md. 422, 131, 149 A.2d 768 (1959). We looked to the legislative history of Article 48A, § 480 in *Howard v. Bishop Byrne Home*, 249 Md. 233, 236, 238 A.2d 863 (1968). We observed that the General Assembly had the opportunity to abrogate the common law doctrine of charitable immunity at that time but declined

> to do so. The statute it enacted, Article 48A, § 480, did no more than restrict the use of the doctrine by an insurer, not by the charitable institution. It thus assured that a charitable institution which opted for insurance would receive the full benefit of the coverage it had obtained without disturbing the doctrine under other circumstances. See *State v. Arundel Park Corp.*, 218 Md. 484, 487-488, 147 A.2d 427 (1959).

334 Md. at 197.

Charitable immunity "is premised on the trust fund theory, that is, because funds of the organizations are impressed with a trust for charitable purposes, those funds should not be diverted to pay tort damages awards." *Montrose,* 363 Md. at 582 (2001) (citing *Loeffler v. Trs. of Sheppard & Enoch Pratt Hosp.*, 130 Md. 265 (1917)); *see also Bishop Byrne Council Home, Inc.*, 249 Md. at 235; *House of Refuge*, 63 Md. at 26, 28. *Ward v. Rebuilding Together Baltimore, Inc.* 2016 WL 3185134 (unreported, 2016).

Applying the test to Debtor and its operations, it is clear that Debtor satisfies the required elements for this defense. Maryland has long recognized that what constitutes a "charity" enjoys a broad interpretation under the law, with virtually any entity designed to "better the condition of society or any considerable part thereof" qualifying. *Rosser v. Prem*, 52 Md. App. 357, 369 (1982). The primary role of Debtor is to provide spiritual leadership, support, leadership development and resources to members of the Roman Catholic faith in the archdiocese, including parishes, schools, and other related entities which carry out the mission of the church. Debtor has been organized and operated for religious, educational and charitable purposes for more than 200 years. Debtor's mission extends to providing charitable services to Maryland residents, including non-Catholics. Debtor intends to present testimony through Bishop Adam J. Parker as to the broad mission of the Debtor, including the outreach to the community in areas beyond simply preaching the Gospel.

Debtor has also been recognized as a tax-exempt non-profit organization, and Maryland law recognizes that such tax-exempt status is indicative of a charitable organization. Likewise,

3

the federal government recognizes Debtor as a non-profit charitable entity under § 501(c)(3) of the Internal Revenue Code, the statutory provision by which the federal government grants tax-exempt status to organizations engaged exclusively in charitable, religious, and educational activities. *Id.* The General Assembly has consistently equated § 501(c)(3) certifications with charitable status,[2] and Maryland courts have held that proof of federal and state tax-exempt charitable status weighs strongly in favor of charitable immunity. *See Abramson*, 334 Md. at 196–200, 206 (considering IRS § 501(c)(3) exemption letter and an affidavit from defendant's administrator); *Brownlee v. Poppleton Partners*, *L.P.*, Case No.: 24-C-14-004722 (Balt. City Cir. Ct. June 15, 2015) 2015 Md. Cir. Ct. LEXIS 255 (Hong, J.) (considering evidence from IRS and state agency confirming charitable exempt status).[3]

*Second*, Debtor satisfies the second factor necessary to qualify for charitable immunity because its funds and real property are held in trust for the furtherance of religious, spiritual and educational purposes. "Under Maryland law, the property of a charitable or religious nonprofit corporation is held in trust." *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 370 Md. 152, 183–84 (2002); *see also Inasmuch Gospel Mission, Inc. v. Mercantile Trust Co.*, 184 Md. 231, 239, (1945) ("[W]hen a corporation is organized for charitable purposes, its property is held in trust for the public."). See *See Schappelle v. Roman Catholic Archdiocese of Washington, a Corp. Sole, et al.* (Case Circuit Court for Montgomery County, Maryland) (Case No. C-15-cv-23-003696) (July 21, 2025), slip op. at 8–10. The trust can be formed expressly or by implication. *James v. Prince George's County*, 288 Md. 315, 336 (1980).

---

[2] Specifically, the General Assembly has defined a "charitable organization" under CJP § 5-406(a)(5), in pertinent part, as "an organization, institution, association, society, *or corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code*." (emphasis added). Similarly, the Maryland Volunteer Service Act, CJP § 5-407(a)(4), defines "Charitable organization" as "an organization, institution, association, society, *or corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code*."). (emphasis added).

#530341047_v1

Here, the Debtor, as a corporation sole, is organized and operated for charitable purposes. Moreover, both Canon law and internal procedures employed by Debtor ensure that these funds are used only to support the Church's mission, and do not pay profits or dividends to any individual. There is no further inquiry, or documentation, required to establish the charitable trust. Nonetheless, a significant portion of Debtor's assets are, in fact, held in express trusts, formed and organized under Maryland law. Nonetheless, Debtor intends to present testimony through John Matera, Debtor's CFO, detailing the financial structure of Debtor's operations. Debtor also intends to present testimony through Tom Alban, Debtor's Director of Risk Management, identifying the scope of insurance coverage (or non-coverage) available to Debtor in light of the claims asserted by Survivors in this bankruptcy proceeding.

While certain Maryland decisions look to corporate formation documents to establish that the assets of the charitable institution are held in trust (*see, e.g., James v. Princes George's County*, 288 Md. at 336), no such traditional corporate formation documents exist because the Debtor was organized and operates as a corporation sole. As such, the Archbishop alone is responsible for Debtor's operations, including the use of Debtor's financial resources of Debtor, and as guided by Canon law as issued by the Holy See. Maryland is unique in that it has both *special legislation* recognizing the Archbishop of Baltimore as a corporation sole and *general legislation* governing the creation of corporations aggregate. *See* Vincec Feliu, *Corporate "Soul": Legal Incorporation of Catholic Ecclesiastical Property in the United States: A Historical Perspective*, 40 Ohio N. Univ. L. Rev. 441, 446–48 (2023). Feliu's commentary is very helpful to understand this distinction and how the Maryland statutory scheme applies to different entities. Md. Corporations & Associations Code §§ 5-301–16 addresses the creation of religious corporations aggregate and requires these entities to adhere to the same corporate governance requirements as other

corporations, namely that they must maintain traditional corporate documents. But this statute does not apply to the Debtor.[4] Maryland law in 1832 first recognized the Archbishop of Baltimore as a religious corporation sole, granting it the ability to hold and convey property, Law of Mar. 23, 1833, ch. 308, § 1, 1832 Md. Laws 376, and subsequent legislation has expanded the privileges afforded the corporation sole. Specifically, in 1894, the legislature enacted a further statute, providing in relevant part:

> That whenever any such property shall be so granted, devised or bequeathed to the said corporation sole for the use and benefit of any particular church, congregation or entity, whether the said designated beneficiary be incorporated or not, or upon any other lawful conditions or any other trusts permitted by law, it shall be taken, held, used and enjoyed by the said corporation sole upon such conditions and trusts only, and in no manner and for no purpose whatsoever inconsistent therewith; and whenever the same shall be so as lastly aforesaid granted, devised, or bequeathed without any such conditions, or any such trusts, or absolutely, then the same shall be taken, held, used and enjoyed by the said corporation sole ***only to advance the general welfare of inhabitants of this State professing the above-named form of the Christian religion, or to promote the legitimate ends of its creation as such corporation sole as aforesaid and in no other manner and for no other purposes whatsoever***.

1894 Md. Laws. 50 (emphasis supplied). This provision, which recognizes the ability of the Debtor to rely upon express trusts or an implied trust to advance the mission of the Catholic Church in the State of Maryland, is still in effect today.

Lastly, in response to the Committee's arguments that the CVA abrogated or pre-empted the defense of charitable immunity as to Survivor Claims, Debtor incorporates by reference the legal arguments advanced by Debtor in the summary judgment papers. There is simply no factual

---

[4] However, many individual parishes in the Archdiocese have formed corporations under this statutory scheme to (1) assist them to more properly function under civil law and (2) to clarify the separate identities of each parish and the Archdiocese.

#530341047_v1

or legal support for the Committee's claim that the CVA addressed the issue of charitable immunity, which remains available as a defense to Debtor in this bankruptcy proceeding.

### 2. Required Pleading Amendments

None for the Debtor.

### 3. Abandoned Issues

None for the Debtor.

### 4. Stipulations of Fact

The Committee and the Debtor have agreed to a set of Stipulations, which will be filed jointly as a separate document.

### 5. Damage Claims/Relief Sought

Debtor seeks a declaratory judgment that Debtor may employ the defense of charitable immunity, as recognized by Maryland law, to tort claims asserted against Debtor in the main bankruptcy proceeding and which are not covered by insurance.

### 6. Documents to be Offered Into Evidence

See list of Debtor Exhibits attached hereto as Exhibit A.

### 7. Expert Witnesses

Debtor does not intend to call any expert witnesses, but reserves the right to offer opinion testimony from one or more lay witnesses.

### 8. Other Matters

While Debtor is entitled to rely upon the defense of charitable immunity in response to the tort claims raised by Survivors in this bankruptcy, Debtor believes it is premature for the Court to determine whether such defense is incompatible with the Bankruptcy Code. Debtor believes the Court can only make such determination when judging the totality of circumstances as evidenced by a Plan of Reorganization, and application of the fair and equitable test under 11 U.S.C. §1129.

Dated: December 3, 2025                Respectfully Submitted,

/s/ *Philip T. Evans*
Philip T. Evans (Fed. Bar No. 11796)
Nicholas A. Dellefave (Fed. Bar No. 31895)
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100

#530341047_v1

Washington, DC 20006
Telephone: 202.457.7043
Email: *philip.evans@hklaw.com*
    *nicholas.dellefave@hklaw.com*

Blake D. Roth (admitted pro hac vice)
C. Scott Kunde (admitted pro hac vice)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615.244.6380
Facsimile: 615.244.6804
Email: *blake.roth@hklaw.com*
    *scott.kunde@hklaw.com*

Catherine Keller Hopkin (Fed. Bar No. 28257)
YVS LAW, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone: 443.569.0788
Facsimile: 410.571.2798
Email: *chopkin@yvslaw.com*

*Attorney for Debtor/Defendant*
*The Roman Catholic Archbishop of Baltimore*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 3, 2025, a true and correct copy of the foregoing was filed and served through the Court's CM/ECF e-filing system on all counsel of record.

*/s/ Philip T. Evans*
Philip T. Evans

#530341047_v1