# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# **(Baltimore Division)**

| | |
|---|---|
| In re: | Case No. 23-16969-MMH |
| Roman Catholic Archbishop of Baltimore, | (Chapter 11) |
| Debtor. | |

| | |
|---|---|
| The Official Committee of Unsecured Creditors, | |
| Plaintiff, | Adv. Proc. No. 25-00084-MMH |
| v. | |
| Roman Catholic Archbishop of Baltimore, | |
| Defendant. | |

## JOINT STIPULATION OF FACTS

Plaintiff the Official Committee of Unsecured Creditors (the "Committee") and Defendant the Roman Catholic Archbishop of Baltimore (the "Debtor") hereby stipulate to the following:

1. On September 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor's bankruptcy case, 23-16969 (the "Bankruptcy Case"), is pending in the bankruptcy court for the District of Maryland.

3. The 2023 Maryland Child Victims Act (the "2023 CVA"), introduced by the Maryland General Assembly as House Bill 1 and Senate Bill 686, became effective on October 1, 2023.

4. The Debtor is continuing in possession of its property and management of its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5. The Debtor filed this chapter 11 case because it faced potentially catastrophic liabilities from hundreds of Survivors'[1] claims following the passage of the CVA.

---

[1] The term "Survivors" in this document refers to individuals with claims, whether asserted before or after the Petition Date, against the Debtor arising from or related to sexual abuse.

6. The decision to seek Chapter 11 reorganization was in response to the 2023 CVA.

7. The Debtor's decision to file the Bankruptcy Case was not a way to avoid its financial responsibility to those harmed in the Debtor's care. It was precisely the opposite.

8. The Debtor has stated that one of its goals in filing this case was and is to fairly and equitably compensate Survivors.

9. The Debtor's Chapter 11 proceedings were "commenced to continue outreach in support of survivors in an ongoing ministry."

10. More than 1,000 proofs of claim have been filed in this chapter 11 case alleging that the Debtor is liable for claims arising from child sexual assault and/or other sexual abuse encompassed by the CVA.

11. All members of the plaintiff, the Official Committee of Unsecured Creditors, are individuals who have asserted claims against the Debtor arising from alleged child sexual abuse.

12. Survivor claims constitute the overwhelming majority of unsecured creditors in the bankruptcy case, both by number of claims and by aggregate dollar amount.

13. Absent the bankruptcy filing, Survivors would have had the opportunity to assert their claims in state court, including the opportunity to obtain discovery, present evidence to juries, be exposed to discovery and cross-examination, and have their claims decided by juries.

14. By filing bankruptcy, the Debtor consolidated resolution of all Survivor claims into a single proceeding.

15. On October 4, 2023, the Court entered its first interim order extending the automatic stay to the Debtor's affiliated entities, including parishes, that are covered by its insurance policies.

16. On November 6, 2023, the Court entered its second interim order extending the automatic stay to such entities.

17. By filing bankruptcy, the Debtor sought to resolve all Survivor claims in a single proceeding with a global settlement that would provide releases to the Debtor and its Catholic affiliates.

18. In the years preceding the Petition Date, the Maryland Office of the Attorney General conducted an investigation into child sexual abuse within the Archdiocese of Baltimore.

19. In April 2023, the Maryland Attorney General's office issued the "Report of Child Sexual Abuse in the Archdiocese of Baltimore."

20. The truth, or not, of the contents of the Report of Child Sexual Abuse in the Archdiocese of Baltimore are not relevant to the merits of this case.

21. The Attorney General's report was publicly available and widely reported in the media in April 2023.

22. The Maryland General Assembly was aware of the Attorney General's report and its findings when considering and passing the CVA.

23. The 2023 CVA was signed into law on April 11, 2023.

24. The Debtor is a corporation sole organized under the laws of the State of Maryland.

25. The Debtor does not have articles of incorporation.

26. At least some Survivors were inhabitants of Maryland professing the Catholic faith at the time they were abused.

27. Many Survivors were, as children, part of the Debtor's congregation of faithful Catholics.

28. At least some Survivors were inhabitants of Maryland professing the Catholic faith on the Petition Date.

29. Providing support and compensation to those in need, including Survivors who were harmed while in the care of the Debtor, is consistent with the Debtor's charitable mission.

30. Since the 1980s, the Debtor has invested more than $13.2 million into the care and monetary compensation for 301 Survivors.

31. Of the $13.2 million, the Debtor paid $6.8 million toward 105 voluntary settlements under a mediation program.

32. The Debtor established a financial mediation program in 2007 designed to compensate survivors.

33. The Debtor paid settlements to Survivors whose claims were time-barred and legally unenforceable under the pre-CVA statute of limitations.

34. The Debtor has used its general operating funds and unrestricted assets to fund the operations of the Office of Child and Youth Protection

35. The Debtor did not seek trustor approval, beyond the Archbishop, before using any of the Debtor's assets to pay Survivor settlements.

36. No trustor has objected to the Debtor's use of assets to pay survivor settlements.

37. The Debtor's assets are used for a wide variety of corporate purposes, including, but not limited to:

- Operating parishes, schools, and administrative facilities;

- Paying salaries and employee benefits;

- Maintaining buildings and equipment;

- Providing social services;

- Funding educational programs;

- Supporting various ministries;

- Paying operational expenses; and

- Settling legal claims, including survivor claims

38. The Debtor does not maintain separate bank accounts for certain purportedly trust-restricted assets.

**STIPULATED AND AGREED TO THIS 9TH DAY OF DECEMBER 2025**:


/s/    Richard L. Costella
Richard L. Costella, Fed. Bar No. 14095
Alan M. Grochal, Fed. Bar No.: 01447
**Tydings & Rosenberg LLP**
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
         agrochal@tydings.com
*Local Counsel to the Official Committee of Unsecured Creditors*

Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
Nicole Khalouian (NY #5755681)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email:  ed.caldie@stinson.com
drew.glasnovich@stinson.com
chris.sevedge@stinson.com
nicole.khalouian@stinson.com
*Counsel to the Official Committee of Unsecured Creditors*

/s/ Phillip T. Evans
Philip T. Evans (Fed. Bar No. 11796)
Nicholas A. Dellefave (Fed. Bar No. 31895)
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone: 202.457.7043
Email: philip.evans@hklaw.com nicholas.dellefave@hklaw.com
Blake D. Roth (admitted pro hac vice)
C. Scott Kunde (admitted pro hac vice)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615.244.6380
Facsimile: 615.244.6804
Email: blake.roth@hklaw.com scott.kunde@hklaw.com

And

Catherine Keller Hopkin (Fed. Bar No. 28257)
YVS LAW, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone: 443.569.0788
Facsimile: 410.571.2798
Email: chopkin@yvslaw.com

*Attorneys for Debtor/Defendant The Roman Catholic Archbishop of Baltimore*